# UNITED STATES DISTRICT COURT

## District of Kansas

(Wichita Docket)

**FILED**
U.S. District Court
District of Kansas

**UNITED STATES OF AMERICA,**

APR  3 2019

**Plaintiff,**

Clerk, U.S. District Court
By_____ 𝒪𝓂 _____Deputy Clerk

v.

**CASE NO. 18-10065-03-EFM -01**

**CASEY S. VINER,**

**Defendant.**

# PLEA AGREEMENT

The United States of America, by and through United States Attorney Stephen R. McAllister, and Casey S. Viner, the defendant, personally and by and through his counsel, Jack Morrison, Jr., hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Counts 12 and 13 of the Superseding Indictment charging violations of 18 U.S.C. §§ 371 and 1512(c)(1), that is, conspiracy and obstruction of justice, respectively. By entering into this Plea Agreement, the defendant admits to knowingly committing the offenses, and to being guilty of the offenses. The defendant understands that the maximum sentence which may be imposed as to Count 12 of the Superseding Indictment to which he has agreed to plead guilty is not more than five (5) years of

imprisonment, restitution in the amount of $5,000.00, not more than three years of supervised release, and a $100.00 mandatory special assessment. The defendant understands that the maximum sentence which may be imposed as to Count 13 of the Superseding Indictment to which he has agreed to plead guilty is not more than twenty (20) years of imprisonment, restitution in the amount of $5,000.00, not more than three years of supervised release, and a $100.00 mandatory special assessment.

2.    **Factual Basis for the Guilty Plea.**  The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

> The defendant, Casey S. Viner, during the evening of December 28, 2017, in the District of Kansas and elsewhere, played Call of Duty World War II – an on line game – with Shane GASKILL from different physical locations. Co-defendant GASKILL played from Kansas while defendant VINER played from Ohio.
>
> Defendant GASKILL became upset by events that occurred during the game, events that he blamed on co-defendant VINER. The defendants argued via electronic communications, and defendant VINER remained upset.
>
> Defendant VINER then contacted co-defendant Tyler BARRISS through electronic communications asking co-defendant BARRISS to "swat" co-defendant GASKILL at an address that co-defendant GASKILL previously provided to defendant VINER, which was 1033 W. McCormick Street, Wichita, KS 67217. This address was not co-defendant GASKILL's true address, but the defendant did not know that at the time.
>
> Co-defendant BARRISS followed co-defendant GASKILL on Twitter, researching and verifying that the address provided by defendant VINER was, in fact, the address for a residence. The defendant admits that he now knows that co-defendant BARRISS also identified a telephone number for the Wichita, Kansas, Police Department.
>
> Co-defendant GASKILL noticed that co-defendant BARRISS was following him on Twitter. Co-defendant GASKILL then began communicating with co-defendant BARRISS through direct electronic messages.

2

At approximately 6:10 or 6:11 p.m., co-defendant BARRISS (while located in California) began a series of telephone calls to the Wichita Police Department (WPD)'s downtown security desk in Wichita, Kansas. To disguise his identity, co-defendant BARRISS acquired an assigned telephone number from TextNow so it appeared to Wichita emergency personnel (with caller id) that co-defendant BARRISS was using a telephone with a "316" area code, the area code that includes Wichita, Kansas.

Co-defendant BARRISS made telephone calls to the WPD, at 6:10 or 6:11 p.m., 6:15 or 6:16 p.m., and 6:17 p.m. During one of these calls, co-defendant BARRISS identified himself as "Brian" to the WPD security officer who answered the phone. According to the security officer, "Brian" asked if the number he called was the police department, then reported that his mother struck his father with a gun. The security officer put the co-defendant on hold and attempted to transfer each call to the 9-1-1 system operated by Sedgwick County Emergency Communications (County). The only successful transfer occurred with the 6:17 p.m. telephone call.

At approximately 6:18 p.m., a County employee (dispatcher) received the call transferred from the WPD. The dispatcher asked the caller for the location of the emergency. The co-defendant stated that he was at 1033 W. McCormick where "I [he] just shot my dad in the head 'Cause he was arguing with my mom and it was getting way out of control." The dispatcher asked the co-defendant to confirm the address, which the co-defendant did, as well as adding that it was a house and he was holding his mother and brother at gunpoint "in a closet right now" to ensure they not go anywhere. The co-defendant identified himself as "Ryan" and he eventually stated "I didn't really mean to kill my dad." The dispatcher asked the co-defendant if he could see his dad "right now." The co-defendant said yes, his dad was "on the floor dead" and "not breathing." Soon thereafter, the co-defendant informed the dispatcher that he was considering lighting the house on fire before committing suicide. This call eventually disconnected, but the dispatcher was unable to call the co-defendant back because the dispatcher had not been able to obtain the number from caller ID (the number did not show up after the call was transferred by the WPD security officer).

The co-defendant later learned that the County dispatched a response team of law enforcement officers to 1033 W. McCormick Street as a direct result of the co-defendant's telephone call. These officers initially believed they were responding to a self-inflicted shooting. Shortly thereafter, dispatch

3

notified the officers that this was not correct, the calling party reported that he shot his dad in the head and that dad was not breathing. When the officers arrived in the area, they established a perimeter around 1033 W. McCormick Street. At some point thereafter, the front door opened and a man, later identified as A.F., stepped onto the front porch. At approximately 6:28 p.m., an officer fired a shot that caused the death of A.F.

At approximately 6:35 and 6:37 p.m. the co-defendant (who at the time was unaware of the shooting) called the WPD security officer again. During one of the calls, the WPD security officer asked the co-defendant for his name and phone number. The co-defendant provided the name "Brian" and a telephone number that started with area code "316." In the final call, the WPD security officer advised the co-defendant to hang up so the County dispatcher could call him. The WPD security officer provided the "316" telephone number to the County dispatcher.

The defendant admits that he has learned through the review of discovery provided by the United States that no one named "Ryan" or "Brian" lived at 1033 W. McCormick on December 28, 2017, to the best of his knowledge and information. No one had been shot inside the house, no hostages were being held, and there was no gasoline poured all over the house, nor was anyone inside threatening suicide. The defendant admits that co-defendant BARRISS made false allegations and statements to the WPD and the Sedgwick County Emergency Communications in phone calls that occurred between the hours of 6:10 p.m. and 6:39 p.m. for the purpose "swatting" co-defendant GASKILL who the defendant and co-defendant BARRISS believed lived at 1033 W. McCormick, Wichita, Kansas.

To make these false telephone calls to the WPD and the County on December 28, 2017, the defendant now knows based on the review of discovery provided by the United States that co-defendant BARRISS utilized interstate electronic communication services.

To communicate with co-defendants GASKILL and BARRISS on December 28, 2017, the defendant admits they utilized interstate electronic communication services.

The defendant admits that his communications with co-defendant BARRISS constituted an agreement (A) to convey false and misleading information in violation of the provisions of Title 18, United States Code, Section 1038, (B) to knowingly and willfully transmit in interstate commerce a communication

4

in violation of the provisions of Title 18, United States Code, Section 875(c), and (C) to use electronic facilities of interstate commerce in violation of the provisions of Title 18, United States Code, Section 2261A, and that he or co-defendant BARRISS committed at least one act to effect the object of the conspiracy. Specifically, the defendant admits that he or co-defendant BARRISS did the following, and that any one of these acts constitutes an overt act in furtherance of the conspiracy –

(i) defendant VINER requested that co-defendant BARRISS swat co-defendant GASKILL;

(ii) the defendant agreed with co-defendant BARRISS to swat co-defendant GASKILL;

(iii) defendant VINER provided an address for co-defendant GASKILL (1033 W. McCormick Street, Wichita, Kansas) and co-defendant GASKILL's user name to co-defendant BARRISS;

(iv) co-defendant BARRISS researched a telephone number for the Wichita Police Department, located in Wichita, Kansas;

(v) co-defendant BARRISS researched the McCormick Street address;

(vi) co-defendant BARRISS disguised his telephone number to make it falsely appear he was calling from a number starting with a 316 area code;

(vii) co-defendant BARRISS placed at least one telephone call to the Wichita Police Department, located in Wichita, Kansas;

(viii) co-defendant BARRISS conveyed false information about himself and events to an employee of the Wichita Police Department at least once;

(ix) co-defendant BARRISS participated in at least one telephone call with Sedgwick County Emergency Communications, located in Wichita, Kansas;

(x) co-defendant BARRISS conveyed false information about himself and events occurring at the McCormick Street address to an employee of Sedgwick County Emergency Communications at least once.

The defendant acknowledges and admits that his actions, outlined above, resulted in the death of another person, A.F., who was living in the District of Kansas at the time of A.F.'s death.

The defendant learned about A.F.'s death from the Internet. On December 28-29, 2017, the defendant admits that he used his iPhone to communicate with the co-defendants and others about these events. The defendant admits

that, at some point that evening, he performed a factory reset on his iPhone in order to delete and destroy evidence of his communications with defendants BARRISS and GASKILL. The defendant admits that this was done in order to alter or destroy the collection of those communications on his iPhone with the intent to impair the integrity or availability of the communications for use in any law enforcement investigation that arose from A.F.'s death in Wichita, Kansas. The defendant admits that co-defendant GASKILL suggested deleting the messages and communications and that the defendant followed the suggestion on or about December 28, 2017.

When the defendant's iPhone was subsequently seized and examined by law enforcement officers, the officers were able to resurrect only part of the defendant's communications about these events because of defendant VINER performing a factory reset on his phone.

3.      **Application of the Sentencing Guidelines.**  The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4.      **Relevant Conduct.**  The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States

6

Sentencing Guidelines (U.S.S.G.) § 1B1.3.

     5.    **Government's Agreements.**  In return for the defendant's plea of guilty as set forth

herein, the United States Attorney for the District of Kansas agrees:

    (a)    to move to dismiss the remaining counts of the Indictment and Superseding Indictment at the time of sentencing;

    (b)    to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment and Superseding Indictment;

    (c)    to jointly recommend a sentence of two years of probation with the standard, mandatory and special conditions recommended by the United States Probation Office, and the additional conditions that (i) the defendant will be confined to his home except to attend school or school functions, church or church functions, work and other meetings authorized by the USPO for a period of six months, (ii) pursue an advanced degree or education, (iii) maintain employment as directed and approved by the USPO;

    (d)    to jointly recommend that the defendant be precluded from engaging in any form of gaming activity for two years and that the defendant's cellular telephone(s) and computers and/or other electronic devices be subject to inspection and search by the USPO; and

    (e)    to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty.

     The United States' obligations under this Paragraph are contingent upon the defendant's

continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting

statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court

determines to be true, willfully obstructs or impedes the administration of justice, as defined by

U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct,

the United States reserves the right to petition the Court for a hearing to determine if he has

breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony given before a grand jury or other tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6.   **Defendant's Agreements.**  The defendant agrees to cooperate fully and truthfully with the United States. Specifically, the defendant agrees:

(a)   to provide truthful, complete, and accurate information and testimony in the trial of this matter, before any grand jury proceeding, or in any related hearing;

(b)   to provide all information concerning the defendant's knowledge of, and participation in the offenses charged in the Indictment and Superseding Indictment and all related conduct; and

(c)   in the event the United States requests the Court to consider reducing the defendant's sentence for his substantial assistance, as discussed below, to not request a downward departure for anything other than his substantial assistance, and to not request a variance for any reason under 18 U.S.C. § 3553(a).

8

7.      **Substantial Assistance.**  The defendant acknowledges that he has not yet provided substantial assistance within the meaning of U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).  He also acknowledges and understands that the determination as to whether he has provided substantial assistance and whether a U.S.S.G. § 5K1.1 motion will be filed are left entirely and exclusively within the discretion of the United States.  If the United States makes a determination that he has provided substantial assistance, the United States shall request that the Court consider reducing the sentence he would otherwise receive under the applicable statutes and/or sentencing guidelines, pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and U.S.S.G. § 5K1.1.

8.      **Defendant's Additional Agreement.**  At least thirty (30) days prior to sentencing, the defendant agrees to provide to the United States Attorney's Office letters of apology to the family of A.F., the Wichita Police Department and Sedgwick County Emergency Communications.  It is understood by the parties that these letters must be handwritten by the defendant, Casey S. Viner, as an expression of his true and sincere thoughts, feelings and beliefs.

9.      **Sentence to be Determined by the Court.**  The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge.  The United States cannot and has not made any promise or representation as to what sentence he will receive.

10.     **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.**  The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

(a)     Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change.  Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns.  The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse,

9

nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

(b)    Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c)    Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

(d)    Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(e)    Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f)    Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g)    If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h)    Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i)    Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j)    Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k)    Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l)    Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

11.    **Restitution.**  The defendant knowingly and voluntarily agrees and consents to pay $2,500.00 in restitution for expenses his criminal conduct imposed on the family of A.F. and Wichita and Sedgwick County law enforcement agencies. Restitution shall be paid to the Clerk's Office as ordered by the Court.

12.    **Withdrawal of Plea Not Permitted.**  The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

13.    **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

14.    **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the

11

length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

15. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

16. **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

17.     **Full Disclosure by United States.**  The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning his background, character, and conduct, including the entirety of his criminal activities.  The defendant understands these disclosures are not limited to the count to which he is pleading guilty.  The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

18.     **Parties to the Agreement.**  The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

19.     **No Other Agreements.**  The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided.  Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion.  The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and that this Plea Agreement embodies each and every term of the agreement between the parties.

20.     The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty.  He further acknowledges that he is entering his guilty plea

freely, voluntarily, and knowingly.

Stephen R. McAllister
United States Attorney

Date: April 3, 2019

Casey S. Viner
Defendant

Date: April 3, 2019

Jack Morrison, Jr.
Counsel for Defendant

Date: April 3, 2019

14